**OLD COLONY TRUST COMPANY, as executor under the will of Charlotte E. Sills, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 68–117–C.**

United States District Court, D. Massachusetts.

June 24, 1970.

Kenneth W. Bergen, M. Gordon Ehrlich, Bingham, Dana & Gould, Boston, Mass., for plaintiff.

Herbert F. Travers, Jr., U. S. Atty., Joseph A. Lena, Asst. U. S. Atty., Johnnie M. Walters, Asst. Atty. Gen., David A. Wilson, Jr., D. Patrick Mullarkey, Attys., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

CAFFREY, District Judge.

This is a civil action to recover estate taxes and assessed interest in the amount of $831,608.31, together with statutory interest thereon. Jurisdiction of this court is based upon 28 U.S.C.A. § 1346 (a) (1).

Plaintiff, Old Colony Trust Company, a Massachusetts corporation, is the duly qualified executor under the will of Charlotte E. Sills, who died on January 26, 1961. The will was admitted to probate in the Middlesex Probate Court on March 10, 1961. Decedent was a domiciliary of Newton, Massachusetts, at the time of her death. The provision of her will which gives rise to the controversy

herein, after making certain specific bequests, devised and bequeathed the residue to plaintiff as trustee, to be held for the payment of annuities until the death of the last survivor of a group of annuitants. The will further provided that upon the death of the last annuitant,

> "the principal of said fund shall be transferred and paid over to the charitable corporations and institutions as follows: Two-fifteenths thereof each to the Belleville General Hospital, Belleville, Ontario, and Newton-Wellesley Hospital, Newton, Massachusetts * * * "

Plaintiff filed an Estate Tax Return, Form 706, in which it deducted, pursuant to 26 U.S.C.A. § 2055, the actuarial value of some thirteen residual charitable bequests, and an estate tax was paid on April 23, 1962. Thereafter, on March 22, 1965, the Commissioner of Internal Revenue proposed an estate tax deficiency in the amount of $697,193.28 because of the inclusion of the two-fifteenths residual bequest to the Belleville General Hospital. On July 13, 1965, plaintiff made a payment in the total amount of $831,608.31 by reason of this proposed deficiency, on November 5, 1965 plaintiff filed a claim for refund in the amount of $831,608.31, and on February 21, 1966 a notice of disallowance of the refund claim was mailed to plaintiff. The instant case was timely filed on February 8, 1968. The original complaint was subsequently amended to add a claim for attorneys' fees and other expenses incurred in contesting the deficiency, for filing a petition for instructions in the state probate court which was carried to the Massachusetts Supreme Judicial Court, and for filing and conducting the litigation in this court.

In its answer, as amended, the United States challenges plaintiff's right to recover any portion of the $831,608.31, and raises an additional issue to the effect that the allowance by Internal Revenue of an additional bequest of one-fifteenth of the residuary estate to the Belleville General Hospital "same to be used towards construction and maintenance of a convalescent home" was error on the part of the Internal Revenue Service because it was not properly a charitable deduction under Section 2055 of the Internal Revenue Code of 1954. Defendant's answer asserts that if the court finds that a portion of the attorneys' fees incurred in connection with this matter are properly deductible, or that the bequest of two-fifteenths of the residuary estate described above is properly deductible, then the bequest of one-fifteenth for construction of a convalescent home must be disallowed and the defendant given an offset by reason thereof against any recovery to which plaintiff is found entitled for either attorneys' fees or the two-fifteenths residuary bequest.

A lengthy stipulation of facts was filed by the parties and thereafter the case was submitted to the court on the basis of the complaint, answer, stipulation as amended, memoranda of law, and oral argument. The amended 13-page stipulation consists of 47 numbered paragraphs, to which are annexed and incorporated by reference 35 exhibits marked with the roman numerals I through XXXV which run to several hundred pages of additional documentation. The following stipulated facts would appear most relevant to a decision of this matter in addition to those facts recited above. (The arabic number which precedes each of these facts indicates the paragraph number of the stipulation in which they appear.)

4. Decedent's will was executed May 19, 1953.

14. Three of the annuitants named in decedent's will are still living and no part of the principal of the estate has been paid to any of the residual beneficiaries.

15. The Belleville General Hospital was established in 1886 by the Women's Christian Association of Belleville, a charitable association organized in 1879, which was constituted a body corporate and politic under that name by special act of the Ontario legislature on April 20, 1907.

16. The hospital was operated exclusively as a charitable hospital and its assets were owned by the Women's Christian Association from 1886 to 1948. By 1948, the size and financial complexity of the hospital and community demands for hospital facilities and exceeded both the financial and the human resources of the Women's Christian Association. Title to the assets of the hospital was transferred to the City of Belleville, without consideration, in 1948, with the understanding and in the expectation that the Provincial legislature would ratify the transfer and provide for an organization to operate and manage the hospital under the terms of the 1948 special act of the legislature, which is Exhibit VI to the stipulation.

17. Chapter 102 of the Special Acts of the Ontario Provincial Legislature for 1948 was later amended by Chapter 95 of the Legislative Acts of 1955 (Exhibit VII to the stipulation).

18. A Special Act of the Legislature of 1963 repealed both the 1948 and the 1955 Acts and created a body under the name "The Board of Governors of the Belleville General Hospital" (Exhibit VIII to the stipulation).

20. Both prior and subsequent to the death of the decedent, the City of Belleville has made capital outlays for the use of the hospital from the proceeds of debentures issued by the City pursuant to either the 1948 Act or the 1963 Act.

21. Subsequent to 1963, the County of Hastings has made capital outlays for the use of the hospital, pursuant to the 1963 Act.

19. The hospital has made regular payments to the City of Belleville from the excess of revenue over expenditures of the amounts falling due each year as payments on the debenture indebtedness of the City under by-laws of the City set out in Exhibits IX, X, XI and XII to the stipulation. It has made no other payment with respect to any other debenture indebtedness incurred by the City or County for purposes of the hospital.

24. In no year since 1961 has the hospital had any excess of expenditures over revenue which has had to be made up by the City or the County.

22. At all times since 1961 the hospital has been a public hospital within the meaning of The Public Hospitals Act of the Legislature of the Province of Ontario (Exhibit XV to the stipulation).

34. At no time, from the date of decedent's death to the present, has the City or County exercised any control over or participated in the management or operation of the hospital. The members of the Board of Governors make decisions independently of and without instructions from representatives of either the City or the County.

35. The hospital has sued and been sued in its own name and has brought legal action against the City for payment for hospital services rendered to indigent residents of the city.

37. From the time of the decedent's death to the present time, the hospital has operated bank accounts exclusively in its own name, and the operation of the hospital has been completely divorced from any accounting function or banking function of the City or County.

38. The hospital maintains a trust agreement with Victoria and Grey Trust Company for the receipt and management of funds resulting from endowments from the public (Exhibit XXIV to the stipulation).

It should be noted that Exhibit VI to the stipulation, which sets out the provisions of Chapter 102 of the 1948 Act of the Ontario Legislature, provides in pertinent part as follows:

"1.–(1) The purchase by the Corporation of all the assets, real and personal, of The Belleville General Hospital, hereinafter called the Hospital, from The Women's Christian Association of Belleville, hereinafter called the Association * * * is hereby ratified and confirmed.

"3. The council of the Corporation is hereby authorized to provide funds for

the purposes aforesaid and for such other purposes as may become necessary in the operation of the Hospital, by the issue, * * * of debentures of the City of Belleville, or by imposing rates on all the taxable property in the City of Belleville.

"8. The Corporation and the Board of Governors respectively shall be capable of receiving, taking, and holding from any person by grant, gift, devise or otherwise * * * any personal property, for the use, support and purposes of the Hospital * * *

"9. All gifts, trusts, bequests, devises, and grants of real or personal property, or of the income or proceeds thereof, heretofore or hereafter expressed by any person in his deed or will, to be made, given or conveyed to the Hospital shall, in so far as the same shall not have vested in possession, or been carried into effect at the date of the coming into force of this Act, in the absence of an expressed intention to the contrary set out in such deed or will, be construed as though the same had been expressed to be made to the Corporation for the purposes of the Hospital to be established under this Act, and shall be paid over * * * to the Board of Governors * * *

"11.–(2) The council of the City of Belleville shall, in each year, assess and levy by a special rate on the whole rateable property within the municipality a sum sufficient to provide such amount, if any, by which the total of such of the estimated expenditures as are approved by the council exceeds the estimated revenues.

"20. This Act may be cited as The City of Belleville Act of 1948."

Exhibit VIII to the stipulation, the text of "The Belleville General Hospital Act, 1962–63" provides, in Paragraph 4 thereof:

"All real and personal property of the Hospital now vested in the City, and all real and personal property hereafter and however acquired for the purposes of the Hospital, shall be vested jointly in the City and County in the proportion of 65 per cent City and 35 per cent County."

Paragraph 6 provides:

"The respective councils of the City and County are hereby authorized to provide funds for the purposes aforesaid, and for such other purposes as may become necessary in the operation of the Hospital, by the issue, * * * of debentures of the City or County, or both * * * or by imposing rates on all the taxable property in the City and County * * * "

Paragraph 15 states:

"All gifts, trusts, bequests, devises and grants of real or personal property * * * shall * * * in the absence of an expressed intention to the contrary set out in such deed or will, be construed as though the same had been expressly made to the City and the County jointly in the proportions aforesaid for the purposes of the Hospital * * * "

Plaintiff's claim for refund is based on the allegation in the complaint (par. 4(i)) that "the two-fifteenths residual bequest to the Belleville General Hospital qualifies as a charitable bequest under Section 2055(a) (2) and/or (3) of the Internal Revenue Code of 1954." The Government counters this claim with the argument that since the bequest in issue cannot legally qualify under Section 2055(a) (1)[1] because a bequest to the City of Belleville, Ontario, is not a gift to a political subdivision of the United States or any State or Territory thereof, it follows that this court should rule as a matter of law that the deduction is barred and precluded from qualification as a proper charitable deduction under either 2055(a) (2) or (a) (3) on the basis of applying the ancient canon of

1. Sec. 2055(a) (1), 26 U.S.C.A., allows an estate tax deduction for bequests "to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes."

statutory construction, *inclusio unius est exclusio alterius*.

■ Assuming, *arguendo*, that the Government is correct in characterizing this bequest as a bequest to a political subdivision of a foreign government, which therefore puts it outside the pale of 2055(a) (1), this still avails the Government naught. The Government's argument for the application of *inclusio unius* totally overlooks that the caption of Section 2055 is "Transfers for Public, Charitable and Religious Uses," and, more significantly, that the scope of 2055 (a) (1) is limited to gifts for exclusively *public* purposes. Section 2055(a) (1) does not undertake to express any congressional intent or ruling with regard to gifts for charitable or religious purposes, as distinguished from gifts for public purposes, whereas it is beyond cavil that Sections 2055(a) (2) and (3) both express congressional mandates with regard to gifts for religious, charitable, scientific, literary or educational purposes. No useful purpose is to be served herein by trying to further clarify a distinction so clearly made by a comparison of the wording of subsection (a) (1) vis-a-vis the wording of subsections (a) (2) and (a) (3). Over and above the lesson to be drawn from the literal reading of this plainly worded statute, there is respectable authority which expressly rejects the Government's contention that the canon of statutory construction, *inclusio unius*, should be applied in the context of this case. In Schoellkopf v. United States, 124 F.2d 982 (2 Cir. 1942), Judge Learned Hand, in ruling that a deduction was properly taken for a bequest to a foreign political subdivision which bequest was limited to charitable purposes, made the observation, at 985:

> "This the defendant [Government] challenges because § 23(n) (1) exempts gifts made to municipalities within the United States, and by implication does not exempt any others. That would indeed preclude unrestricted gifts to foreign cities, and is a good answer so far as concerns § 23(n) (1); but § 23(n) (2) creates an exemption without local limitations when the purposes are charitable as there defined. The canon, *expressio unius*, does not therefore apply * * *."

Section 23 of the Act of 1928 was the statutory ancestor of 2055 of the Internal Revenue Code of 1954.

Essentially the same ruling as that contained in *Schoellkopf* was recently made by the Court of Claims in Continental Ill. Nat. Bank & Trust Co. of Chicago v. United States, 403 F.2d 721, 185 Ct.Cl. 642 (1968), where the court observed, at 727:

> " * * * unrestricted bequests to foreign cities are not deductible under the applicable statute and regulations, whereas contributions and gifts to foreign cities for exclusively charitable purposes are deductible."

Accord, Kaplun v. United States, 303 F.Supp. 733 (S.D.N.Y.1969).

■ To the extent that Edwards v. Phillips, 373 F.2d 616 (10 Cir. 1967), is authority to the contrary, I do not find its reasoning persuasive, having in mind that the opinion in that case cites no authority for the result reached and, curiously, fails to mention Judge Hand's opinion in *Schoellkopf*. Consequently, I rule that the Government's contention that the charitable deduction must be disallowed on the basis of *inclusio unius* is not persuasive, and I reject it on the authority of *Schoellkopf, supra, Continental Illinois, supra,* and *Kaplun, supra.*

■ The next matter for resolution is whether or not the bequests in issue herein do qualify under Section 2055(a) (2), and this is to be determined, of course, by an examination as to the nature and purpose of the actual bequest made by the testator and by an examination of the character of the legal entity to which that bequest was made. 26 U.S.C.A. § 2055(a) (2) provides in pertinent part:

> "(a) In general.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of

the gross estate the amount of all bequests, legacies * * *

> (2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *."

On the basis of the stipulation and exhibits thereto, I find that at all times material herein the Belleville General Hospital was and is a corporation organized and operated exclusively for charitable purposes, and I rule that plaintiff is entitled to the charitable deduction under the provisions of Section 2055(a) (2). Because of this ruling I do not reach plaintiff's alternate contention that it is entitled to deduct under either Section 2055(a) (3) or the Estate Tax Treaty between the United States and Canada.

Even if this or an appellate court were to rule that the Belleville General Hospital is not a corporation organized exclusively for charitable purposes as presently constituted and operated, nevertheless the taxpayer is still entitled to prevail because of the proviso in the concluding paragraph of the opinion of the Supreme Judicial Court of Massachusetts to the effect that no distribution may be made by the Middlesex County Probate Court when the time finally comes for distribution of the residuary bequests, except to a qualified charity, even if the Probate Court is required to apply the *cy pres* doctrine in order to accomplish that result. Old Colony Trust Co., Executor v. Board of Governors of the Belleville General Hospital, et al., Mass., 247 N.E.2d 583.

The state court decision resulted from a petition for instructions brought by plaintiff herein as executor subsequent to the Internal Revenue's disallowing the deduction taken on the estate tax return for the two-fifteenths residuary bequest. The court said, in pertinent part, at 247 N.E.2d 585:

> "This petition is appropriate to raise the questions of Federal estate taxation. *Watson v. Goldthwaite*, 345 Mass. 29, 31, 35, 184 N.E.2d 340. *Old Colony Trust Co. v. Silliman*, 352 Mass. 6, 8, 223 N.E.2d 504."

and at 247 N.E.2d 585:

> "The will manifests an express intent to make a charitable bequest in trust for general hospital purposes in Belleville. * * * It would be an elementary assumption that she also intended this charitable bequest to be accorded the usual tax exemption of any gift to hospital purposes and not to be subject to diminution by taxation. * * * It is equally clear that the testatrix could not have had the purpose to confer a financial benefit on Ontario municipalities in the discharge of their governmental functions. We do not accept the ruling of the Internal Revenue Service. * * *
>
> "This is eminently a case to apply the cy pres doctrine. * * * In so doing we shall act in our firm belief that the testatrix is entitled to have the carrying out of her charitable purpose a certainty and not a probability. Accordingly we hold that the bequest must be impressed with a trust obligating that the funds can be expended for charitable hospital purposes only."

and at 247 N.E.2d 586:

> "The case is to be remanded to the Probate Court * * * with the responsibility of insuring that the two-fifteenths share * * * shall be given over to 'The Board of Governors of the Belleville General Hospital' if that corporation is then operating the hospital, or to a trustee to be appointed by the Probate Court, or in any other manner as the court then deems proper, but in any event only after the court is completely satisfied that the share will be used solely for charitable hospital purposes in the Belleville area.
>
> "The petitioner is instructed that the gift is for general charitable hospital purposes in the Belleville area, and that it is in no sense a gift to the City of Belleville or the County of Hastings * * *."

In the light of the quoted opinion of the Supreme Judicial Court, there can be no doubt that the instant bequest, if it be assumed to be a gift to a foreign political subdivision, is nevertheless a gift

"to or for the use of any corporation organized and operated exclusively for * * * charitable * * * purposes * * * no part of the net earnings of which inure to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation." (Section 2055(a) (2)).

In its amended answer the Government asserts that the Internal Revenue Service erroneously failed to disallow the estate tax deduction claimed by plaintiff on account of the residuary bequest of one-fifteenth to the Belleville General Hospital, "the same to be used towards construction and maintenance of a convalescent home." The answer states that the time for making a deficiency assessment has expired, but claims that the Government should be allowed to offset an amount equal to this deficiency assessment against any sum found to be due to plaintiff. No authority is cited as a basis for the claimed existence of a power in this court to reduce any recovery found legally due to plaintiff by the offset, and thus to circumvent the law placing a time limitation within which the Internal Revenue Service must propose a deficiency or be permanently barred from so doing. The point need not be pursued herein because for the reasons cited above with reference to the two-fifteenths bequest and its validity under Section 2055(a) (2), I rule that the Internal Revenue Service did not act erroneously in allowing a deduction of the one-fifteenth residuary bequest under 2055(a) (2).

I further find that plaintiff is entitled to a deduction for expenses and reasonable attorneys' fees in connection with filing the claim for refund, for the litigation in the Middlesex Probate and the Supreme Judicial Courts, and for prosecuting this case. If counsel cannot agree on the amount of these items a hearing will be held thereon when this judgment on the propriety of the charitable deduction has become final.

Judgment for plaintiff in the amount of $831,608.31, plus statutory interest.